Amelia J. THOMAS, et al., Appellant,

v.

Ollie Simmons HENDERSON and Luie Simmons Moore, et al., Appellees.

No. 09–89–133 CV.

Court of Appeals of Texas, Beaumont.

Aug. 30, 1990.

Rehearing Denied Sept. 18, 1990.

Matthew W. Plummer, Houston, for appellant.

Robert F. Atkins, Coldspring, for appellees.

## OPINION

BROOKSHIRE, Justice.

A trespass to try title proceeding was conducted below. The Appellants, including one Odessa Loston, instituted the trespass to try title cause of action against Ollie S. Henderson, the Appellee here, and others, petitioning to obtain title including certain mineral rights in, to and under a 100 acre tract of land. The Appellees filed a general denial and a "not guilty" plea. A jury found in favor of the Appellants on the necessary elements of an adverse possession claim. The trial court, nevertheless, awarded one-half of the mineral interests to the Appellees, and also awarded an undivided five acres of land on the western one-half of the property to a third-party defendant. The trial court awarded Attorney Ad Litem fees.

The Appellants advance three points of error. The first point of error reads:

THE TRIAL COURT ERRED IN. AWARDING APPELLEES, HENDERSON, ET AL, TITLE TO MINERALS UNDER THE EASTERN ONE-HALF OF TRACT.

The Appellants argue that they traced their claim of title from the sovereignty of the soil. By an opening statement the attorneys for the plaintiffs, Appellants here, were shown to be Odessa F. Loston, Ollie F. Douglass, Ross Burrell, Lawrence Charles Burrell, Sr., Hazel Freeman—these being the plaintiffs below. The plaintiffs sued as defendants J.D. Martinez, Ollie Simmons Henderson, also known as Ollie Henderson; Luie Simmons Moore, also known as Luie Moore; W.F. Bridewell, Dorothy W. Boone, Ed Garrett Boone, Ellen Boone Schwethelm, individually, Jean Rowe Bagby, William C. Bagby, Sarah Bagby, Elisha Wooten, Ovell McKinney, Ray Wooten, Deress Wooten, Glenda Faye McCardell, Dan E. Boone, Lewis Darrell Phillips, Everett Carr, Dorothy P. Carr, Ms. Carl P. Warden, Robert F. Phillips, J.D. Boone, Dan Boone, Trustee, Herbert Madeley and the Protestant–Episcopal Diocese of Oklahoma City, being all the defendants.

The opening statement of the plaintiffs' attorney acknowledged that the lawsuit was in the statutory form of a trespass to try title action. The attorney affirmatively stated that the plaintiffs had affirmatively pleaded that they were in possession of the property since December of 1938. They plead the 25 year statute of limitations, the 10 year statute of limitations, and the three year statute of limitations. The defense stated that their defense would be a legal one based on the facts as raised. Without any objection, upon a proper motion for default judgment, the plaintiffs obtained a default judgment against Ruth Clark who had filed a disclaimer and the Protestant–Episcopal Diocese of Oklahoma City.

Plaintiffs introduced into evidence Plaintiffs' Exhibit No. 1 which was a patent. The patent was from the State of Texas to Jose Dolores Martinez. The patent involved the Martinez League No. 4. Slightly later the record shows that when "they abstracted the county" the abstract number was 34, J.D. Martinez. The plaintiffs introduced their Exhibit No. 2 which was a plat or a map being the same as the Jose Dolores Martinez league abstract No. 34. Exhibit No. 3A was the very detailed and lengthy field notes of the 103.433 acres of

land, being the land in question and being a part of the J.D. Martinez Survey A34 in San Jacinto County, being the same land described in Volume 5, page 571 of the Deed Records of San Jacinto County. Plaintiffs' Exhibit No. 3B was a plat or map of the 103.433 acres in the J.D. Martinez Survey Abstract No. 34 which shows in very considerable detail the metes and bounds descriptions of the tract of land involved. The patents were passed upon during the biennial term of 1830 and 1831. The survey was made by V.W. Gottula. He certified that the field notes correctly represented a survey made by him on the ground in October or November of 1983.

The next proffer was Plaintiffs' No. 4 which was an oil, gas and mineral lease dated August 19, 1970, between Odessa Loston of 5609 Wayne Street, Houston, Texas, to the Ada Land Company covering a tract of land containing 100 acres more or less. Upon the cross-examination of the surveyor, Mr. Gottula, there was objection made by the Appellant's attorney that any questions concerning the property in the lawsuit to whatever happened or transpired to this property since 1939 would be admissible but anything before 1939 would be inadmissible. The position taken at trial was that the lawsuit of the Appellants pertains to "whatever transpired to this property since 1939". By a witness proffered by the plaintiffs below, it was shown that Ann Ford had lived on the tract in question and used the tract in question for a long time. Ann Ford and her husband farmed the tract. They also ran cattle on the tract. The tract was fenced except for the big creek which ran as a boundary line in the rear of the tract or towards the back of the tract. Witnesses proffered by the Appellants proved that the tract was used for farming and for pastures for some cattle as well as some of the timber as a wood lot, apparently for domestic fuel. It was shown by one of the heirs that all the plaintiffs in this lawsuit were claiming land as heirs of Ann and Henry Ford. More specifically, as the grandchildren of Ann Ford.

The defendants offered a deed from Henry Ford and wife, Ann Ford to W.J. Simmons dated July 30, 1909, which had been duly recorded in the Deed Records of San Jacinto County. Defendants below also offered their Exhibit No. 2, which was a power of attorney from W.J. Simmons to G.I. Turnley dated February 25, 1910, and defendants' Exhibit No. 3 was a deed from G.I. Turnley as agent for W.J. Simmons to Henry Ford and wife, Ann Ford, dated May 18, 1910, and recorded in the Deed Records. That deed from Turnley to Henry and Ann Ford was for the west 50 acres of the 100 acre tract. The defendant next offered a mineral deed, being a mineral deed from W.J. Simmons to Logan H. Bagby, Jr., dated November 3, 1932, which conveyed the minerals under the 50 acres of land retained by W.J. Simmons in his deed out of the 100 acres being the east 50 acres. Another mineral deed was offered into the evidence being from Garrett Boone to Serbo Oil Company conveying an undivided one-eighth interest in the minerals in the east 50 acres. There was a mineral deed offered from Logan H. Bagby, Jr., to Garrett Boone, which covers the east 50 acres dated November 14, 1932.

The plaintiffs lodged objections to these instruments. The first was relevancy. The plaintiffs took the position that the lawsuit was filed and tried on a theory that the plaintiffs took adverse possession in 1938 and that what transpired by the documents in 1909 had simply no relevancy to this lawsuit. The second objection was on irrelevancy in that there was no connection in tying the title of Henry Ford and Ann Ford to the sovereignty of the soil—that the documents of 1909 were only pieces of paper. The plaintiffs took the position that there would have to be other documents as a predicate that would trace Henry and Ann Ford's title all the way back to the sovereignty of the soil. And until the title of Henry and Ann Ford was actually traced back to the sovereignty of the soil, the documents proffered by the defendants were nothing.

The next objection was that defendants' exhibits 1, 2 and 3 together make a mortgage and that the Fords therefore could not convey their homeplace. The last ob-

jection was like the one immediately before it that as to defendants' exhibits 1, 2 and 3, that the same were nullity until "they can go back to sovereignty of the soil." The defendants claim specifically when Henry Ford and wife, Ann Ford, conveyed to W.J. Simmons that that made W.J. Simmons a common source of title. Defendants were claiming derivatively through W.J. Simmons and also through Henry and Ann Ford. The plaintiffs' able counsel conceded that his clients were claiming as heirs of Henry and Ann Ford, although he stated that the way the lawsuit had been pleaded that the plaintiffs below had gone into possession in 1938 and that they were holding the land for 25 years before 1938 and that the plaintiffs were in possession and were holding it at the time of trial. The court overruled the objections and then there were further objections made to the mineral deed from W.J. Simmons to Logan Bagby and from Bagby to his assignees. Significant is the fact that the plaintiff did not object to the offering into evidence—an offer made by the defendants of the defendant's Exhibit No. 4, which was an affidavit of heirship of Henry Ford and Ann Ford made by Odessa Loston dated March 9, 1982.

In evidence also is an affidavit made by J.G. Ross dated October 21, 1932. The affidavit stated that Ross was at that time County Surveyor, San Jacinto County. He had been such officer for 23 years. He was a credible person. He was duly sworn. He swore that he was well and intimately acquainted with a 100 acre tract from the J.D. Martinez League Abstract No. 34, San Jacinto County, Texas, known as the Henry Ford 100 acre tract. He had known such tract for more than 20 years. He swore that Henry Ford and wife conveyed the whole said 100 acres of land to W.J. Simmons by deed duly recorded and that W.J. Simmons by his agent and attorney in fact, G.I. Turnley, had conveyed to Henry Ford the 50 acres of land described by metes and bounds. The 50 acres described as being off the west portion of the 100 acre tract and that by a power of attorney duly recorded Simmons fully authorized Turnley as agent, an attorney of fact to sell and convey all interests owned by him in land in San Jacinto County, especially in the J.D. Martinez League No. 4, that Henry Ford and his wife had occupied, cultivated, claimed, used and enjoyed the said land for a period of more than ten years before they conveyed the same to W.J. Simmons and that Henry Ford and his wife and his family had continued to occupy, claim, cultivate, and enjoy the west 50 acres of the said tract of land for many years.

■ We conclude that a common source was established by the defendants. Admittedly, it was not an agreed common source but we determine that the defendants did show a common source. Hence, we see no error in the trial judge's admitting the defendant's documentary evidence into the record and admitting the same before the jury. Plainly, the minerals in question and contended for by the Appellees were severed from the surface quite a number of years prior to the time that the plaintiffs below made any contention that they had even possession by adverse possession. And since the plaintiffs below did not show any adverse possession as to the minerals themselves, we conclude that the trial court's judgment as to the minerals is without error. We determine that Boone heirs also claim under this same common source; however, their mineral interest is in the east one-half of the 100 acre more or less tract. The judgment awarded to plaintiffs Odessa F. Loston, Ollie F. Douglass, Lawrence Charles Burrell, Sr., Ross Burrell and Hazel Freeman, title to and possession of all oil, gas and other minerals under the west one-half of the said property, less the undivided five acres of minerals owned by Elisha Wooten, individually and as independent executor of the estate of Oscar Wooten, deceased, Ovell McKinney, Oscar Wooten, Jr., Ray Wooten, Deress Wooten and Glenda Faye McCardell.

We also affirm the trial court's judgment that Odessa F. Loston, Ollie F. Douglass, Lawrence Charles Burrell, Sr., Ross Burrell and Hazel Freeman, plaintiffs, take nothing as to the oil, gas and minerals under the east one-half of the said 103.433

acres of land as described by metes and bounds by the surveyor Gottula.

We also affirm insofar as it is actually ordered that if the plaintiffs and the third-party defendant who is Elisha Wooten, individually and as independent executor of the estate of Oscar Wooten, Deceased, Ovell McKinney, Oscar Wooten, Jr., Ray Wooten, Deress Wooten and Glenda Faye McCardell have not entered into a voluntary agreement to set aside and partition the five acres awarded to those third-party defendants, then, as the trial court affirmatively stated, upon a proper motion the trial court will appoint commissioners in accordance with the law and in accordance with TEX. R.CIV.P. 761 to properly go forward and partition lawfully and legally the said five acres. We remand that part to the trial court to proceed in accordance with the law and with Rule 761 and to lawfully set aside and partition the said five acres.

We affirm that the 103.433 acres out of and a part of the J.D. Martinez Survey Abstract No. 34, San Jacinto County, Texas, is properly described in the final judgment below. We affirm that part of the trial court's judgment wherein the palintiff, Odessa F. Loston, Ollie F. Douglass, Lawrence Charles Burrell, Sr., Ross Burrell, and Hazel Freeman were awarded the title to and possession of all the oil, gas and minerals under the west one-half of the said property; less, however, an undivided five acres of minerals owned by the defendants Elisha Wooten, individually and as independent executor of the estate of Oscar Wooten, Deceased, Ovell McKinney, Oscar Wooten, Jr., Ray Wooten, Deress Wooten and Glenda Faye McCardell.

We think that our ruling that a common source was established is reinforced by TEX.R.CIV.P. 798 which states in part and in substance that it shall not be necessary for a plaintiff to deraign title beyond a common source. We also perceive that Simmons acting through his attorney-in-fact by deed dated November 3, 1932, effectively severed the minerals from the surface under the east one-half of the property in question.

■ We also conclude that it is a well-established rule in our state that after the severance of the surface of the land from the mineral estate and the mineral estate having been severed from the surface, that the mere possession of one will not ripen into a limitation title to the other, and that after the severance of the oil and gas and mineral estate from the surface that an adverse possession and use of the surface does not constitute adverse possession and use of the minerals or the mineral estate. See *Watkins v. Certain–Teed Products Corporation*, 231 S.W.2d 981 (Tex.Civ.App. —Amarillo 1950, no writ). We conclude that an equally well-established rule is that limitation cannot be successfully asserted against the owner of a severed mineral estate or mineral interest by a surface holder when the surface holder or surface owner perfects his title to the surface by taking actual possession of the surface but fails to take actual possession and use of the minerals for the statutory required period. See *Carminati v. Fenoglio*, 267 S.W.2d 449 (Tex.Civ.App.—Fort Worth 1954, writ ref'd n.r.e.). The Appellants in their brief affirmatively and unequivocally concede that they have no quarrel with the trial court, that the Wootens as third-party defendants should be entitled to the five acres which is a five acre undivided interest. The Wootens are proper devisees. As we understand the judgment, the trial court has left the matter as an undivided interest and has not actually entered a decree of partition and hence, the procedures in a formal partition suit or a formal partition proceeding have not been invoked. The plaintiffs and the third-party defendants may, of course, proceed in another plenary action to actually partition the five acres.

■ We hereby remand only that part of the judgment which reads as follows:

It is further ORDERED that the Attorney Ad Litem's fee is hereby set in the amount of TWO THOUSAND FIVE HUNDRED DOLLARS ($2,500.00) and is awarded to Robert Hill Trapp. This fee is to be paid by Plaintiffs.

We have no quarrel with the amount of the fee being two thousand five hundred dollars. However, we remand this portion back to the trial court for a hearing to determine what would be equitable, fair, just and right in the assessing of this Attorney Ad Litem's fee as between the parties, plaintiffs and defendants including the third-party defendants. Both the Appellants and the Appellees in this action have been successful parties in a realistic, pragmatic sense. Even the third-party defendants have been awarded an undivided five acre tract in the western one-half of the 103.433 acres.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

BURGESS, Justice, concurring and dissenting.

I concur in the majority's disposition of the undivided five acre interest awarded the Wootens if the majority is holding that the five acres may be partitioned out of the entire tract and not restricted to the western one-half. In light of the majority's result concerning the mineral interest, I also concur in the remand of the ad litem's fees.

I respectfully dissent to the majority's affirmance of the awarding of the mineral interest to appellees. Simply put, I find no common source. Appellants, while they may have been heirs of Henry and Ann Ford, sought only to prove title through adverse possession. They never claimed the Fords held record title to the land. It was appellees who introduced the 1909 deed from the Fords to W.J. Simmons. However, appellees *never* proved any chain of title from the Fords back to the sovereign. Thus any conveyance by the Fords and any subsequent severance of the minerals has no foundation upon which to rest. While TEX.R.CIV.P. 798 states it shall not be necessary for the plaintiff to deraign title beyond a common source, implicit in that statement is "a common source of title". Appellants did not try to show (and probably could not) any record title back to the Fords in 1909. They only proved title by adverse possession after 1938 not back to 1909.

Stated differently, if appellants were claiming under some record title of the Fords as of 1909 or were claiming adverse possession by the Fords as of 1909, then there *would* be a common source of their title and that of appellees. However, as previously noted, appellants were only claiming title by adverse possession after 1938, thus no common source of title was shown.

There being no common source I would reverse and render judgment in favor of appellants; because the majority does not, I respectfully dissent.